**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1775-WJM-MJW

ERIC VERLO,
JANET MATZEN, and
FULLY INFORMED JURY ASSOCIATION,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, COLORADO, a municipality,
ROBERT C. WHITE, in his official capacity as chief of police for Denver, and
CHIEF JUDGE MICHAEL MARTINEZ, in his official capacity as chief judge of the
Second Judicial District,

    Defendants.

## ORDER DENYING MOTION TO STAY

Before the Court is the Second Judicial District's Motion to Suspend Preliminary Injunction Pending Appeal ("Stay Motion").[1] (ECF No. 40.) The Second Judicial District asks this Court not to enforce its Injunction against Paragraph 1 of the Plaza Order while the Second Judicial District appeals that Injunction. At the Preliminary Injunction Hearing, however, testimony from Steven Steadman established that the Plaza Order was primarily motivated by fear of violent protests that might erupt if state court murder defendant Dexter Lewis received the death penalty when James Holmes did not. Moreover, Steadman answered "no" when counsel for the Second Judicial District asked, "Is [the Plaza Order] intended to be permanent and ongoing?"

---

[1] This being the third major order this Court has issued in this case in the past two weeks, the Court presumes familiarity with the previous orders (ECF Nos. 28, 52) and capitalized terms in those orders bear the same meaning here.

Since then, the jury in the Dexter Lewis case has determined that Lewis will not receive the death penalty. The Court therefore inquired of counsel for the Second Judicial District at the recent Show Cause Hearing whether the Plaza Order would remain in place. Counsel for the Second Judicial District stated that it would. Under that understanding—*i.e.*, that any ruling from this Court on the Stay Motion would not soon be moot—the Court proceeds to resolve the Stay Motion. For the reasons explained below, the Motion is denied.

## I. LEGAL STANDARD

"While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). This Court must consider the following factors when deciding whether to grant a Rule 62(c) stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

## II. ANALYSIS

The Court will discuss each of the Rule 62(c) factors in turn.

**A.    Likelihood of Success on the Merits**

    1.    <u>Authority of the Second Judicial District</u>

The Second Judicial District first argues it is likely to succeed in overturning this

Court's conclusion that Denver has the authority to speak for the Courthouse Plaza, and particularly whether to designate it as a public or nonpublic forum. (ECF No. 40 ¶ 9.) This conclusion was a predicate for this Court's subsequent holding that Plaintiffs were likely to succeed in establishing that the Courthouse Plaza is at least a designated public forum because Denver has stipulated as much. (ECF No. 28 at 18.)

This Court gave three reasons for its conclusion that control of the Courthouse Plaza belongs to Denver and not the Second Judicial District: (1) Denver indisputably owns the Courthouse itself and all of its grounds; (2) the Second Judicial District was not aware of any lease or other formal agreement establishing the Second Judicial District's authority to supervise the Courthouse grounds; and (3) the Denver County Court, over which the Second Judicial District has no administrative authority, also occupies the Lindsey-Flanigan Courthouse. (ECF No. 28 at 17–18.)

The Second Judicial District challenges only the third reason, submitting an affidavit from the Hon. John M. Marcucci, Presiding Judge of the Denver County Court. (ECF No. 40-1.) Judge Marcucci states that he works closely with Chief Judge Martinez on courthouse security matters. (*Id.* ¶¶ 5–8.) He continues, "I am submitting this affidavit to clarify that, notwithstanding any suggestion to the contrary by the Denver City Attorney's office, the Denver County Court supports the authority of Chief Judge Martinez to issue administrative orders such as [the Plaza Order]." (*Id.* ¶ 11.)

Rather surprisingly, however, Denver's *opposition* to the Motion to Stay *also* contains an affidavit from Judge Marcucci. (ECF No. 51-1.) In that affidavit, Judge Marcucci says that the phrase "notwithstanding any suggestion to the contrary by the Denver City Attorney's office" should be stricken from his previous affidavit. (*Id.* ¶ 4.)

It is not clear what substantive effect, if any, Judge Marcucci's second affidavit has on his first affidavit. But the mere fact that the Second Judicial District and Denver are submitting apparently competing affidavits from the same individual certainly makes the rift between Denver and the Second Judicial District all the more apparent. The Court welcomes Judge Marcucci's endorsement of the Plaza Order, but it simply does not inform whether the Second Judicial District has authority under state law to determine whether the Plaza is a public or nonpublic forum. Thus, the Court finds that the Second Judicial District is not likely to succeed on appeal in this respect.

2. <u>Strict Scrutiny Standard</u>

The Second Judicial District next contends that this Court misapplied the strict scrutiny standard, *i.e.*, the requirement that the Plaza Order be narrowly tailored to serve a significant government interest. (ECF No. 40 ¶¶ 12–17.) The Second Judicial District contends that the Plaza Order "address[es] at least three significant government interests: courthouse access; public safety; and judicial dignity and decorum." (*Id.* ¶ 14 (citations omitted).)

The Plaza Order itself asserts these three justifications. (*See* ECF No. 25-1 at 1.) However, in preliminary injunction proceedings, the Second Judicial District only defended courthouse access and public safety, not judicial decorum. (*See* ECF No. 28 at 20; ECF No. 24 at 12.) Moreover, the Second Judicial District has not pointed this Court to a case in which judicial decorum or something similar was upheld as a "significant" interest under the strict scrutiny standard applicable to public forums, as opposed to a "reasonable" restriction under the less demanding standard applicable to nonpublic forums. *Cf. Hodge v. Talkin*, ___ F.3d ___, ___, 2015 WL 5058322, at

*14–15 (D.C. Cir. Aug. 28, 2015) (judicial decorum accepted as a reasonable justification for limiting expressive activities on the Supreme Court Plaza, deemed to be a nonpublic forum); *Comfort v. MacLaughlin*, 473 F. Supp. 2d 1026, 1029 (C.D. Cal. 2006) (appearance of impartiality accepted as a reasonable justification for prohibiting preaching on state courthouse grounds, deemed to be a nonpublic forum). Thus, the Court finds that the Second Judicial District is unlikely to succeed on appeal by asserting judicial decorum as a significant interest.

As for courthouse access and public safety, the Court notes that even under the less restrictive "reasonableness" standard applicable to nonpublic forums, courts have required some evidence that the problems a speech restriction seeks to address actually exist. *See, e.g.*, *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 968 (9th Cir. 2002), *abrogated on other grounds by Winter v. NRDC*, 555 U.S. 7 (2008). Here, all of the evidence at the preliminary injunction hearing showed that the Courthouse Plaza had faced essentially no problems in the five years since the Lindsey-Flanigan Courthouse opened. (ECF No. 28 at 9–11, 20–21.) Thus, there was essentially no evidence that expressive activities on the Courthouse Plaza were creating problems for courthouse access or public safety.

The Second Judicial District contends, however, that activities on the Plaza *since* this Court issued its Injunction show a threat to courthouse access and public safety. (ECF No. 40 ¶ 15.) The Court will address this claim in more detail below when discussing the irreparable injury factor of the Rule 62(c) test. For current purposes, it is enough to note that the Tenth Circuit's review will be on the record developed before this Court issued its preliminary injunction ruling. *See, e.g.*, *Niemi v. Lasshofer*, 728

5

F.3d 1252, 1261 (10th Cir. 2013); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1196–97 (10th Cir. 2003).  Appealing a preliminary injunction based on post-injunction developments would, of course, make the Tenth Circuit's abuse-of-discretion review standard nonsensical because a district court cannot abuse its discretion in light of matters unknown to it when exercising that discretion.  Thus, the Court finds that the Second Judicial District is not likely to prevail on appeal based on post-injunction developments.[2]

    3.    <u>Standing</u>

The Second Judicial District further argues that it is likely to establish that Plaintiffs have no Article III standing because, in light of Denver's stipulation that distributing jury nullification literature on the Courthouse Plaza is permissible, Plaintiffs face no credible enforcement threat.  (ECF No. 40 ¶¶ 18–20.)  The Court previously rejected this argument because judges of the Second Judicial District could still hold a Plaza Order violator in contempt.  (ECF No. 28 at 12–13.)  The Second Judicial District counters that "how the [contempt] citation would be served is unclear."  (ECF No. 40 ¶ 18.)  Notably, however, the Second Judicial District does *not* state that a citation *could not be served*.

---

[2] Although the Court hesitates to mention it in light of the flurry of urgent motions already filed, the relief the Second Judicial District apparently seeks would more appropriately be raised in a motion to modify the Injunction based on changed circumstances.  However, should the Second Judicial District file such a motion, it would first need to explain how this Court retains jurisdiction to modify an injunction currently on appeal.  *Cf. Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3d Cir. 1989); *Velazquez v. Legal Servs. Corp.*, 356 F. Supp. 2d 267, 271–72 (E.D.N.Y. 2005); *United States v. Power Eng'g Co.*, 10 F. Supp. 2d 1165, 1172 (D. Colo. 1998).  It would also need to explain how the Injunction, as currently written, interferes with its ability to preserve courthouse access and public safety.  As discussed further below, the Court specifically drafted the Injunction so that it would *not* interfere with those goals.

The Second Judicial District also counters that "if someone were cited with contempt and then failed to appear, any subsequent arrest would be for the [failure to appear], and *not* for the original contempt citation." (*Id.* ¶ 19 (emphasis in original).) But the Second Judicial District does not explain how this distinction makes a difference. One way or the other, the alleged contemnor could still be cited for contempt and arrested.

The Second Judicial District lastly challenges this Court's "judicial notice of the fact that Colorado state law enforcement officers, not subject to Denver's stipulation, could also effect the arrest of such a hypothetical violator." (ECF No. 28 at 13.) The Second Judicial District argues that this "is simply wrong as a matter of state law. There are no such state law enforcement officers with the authority to make arrests on courthouse grounds and to refer them for prosecution." (ECF No. 40 ¶ 20.) This Court's reasoning, however, was not limited to officers with authority over courthouse grounds.

Finally, the very fact that the Second Judicial District brings this Stay Motion demonstrates that it must believe it has some effective means to enforce the Plaza Order even when Denver refuses to do so. Or in other words, the Court presumes that the Second Judicial District would not consume this Court's and the parties' resources in seeking relief that would not have any real effect (which would be the case if Denver's stipulation truly means that the Second Judicial District has no way to enforce the Plaza Order).

Thus, the Court finds that the Second Judicial District is unlikely to succeed in convincing the Tenth Circuit that Plaintiffs lacked standing to seek a preliminary injunction.

B.     **Irreparable Injury & Public Interest**[3]

The Second Judicial District contends that it is being irreparably injured because protesters have now descended on the Courthouse Plaza and begun

> erecting canopies, setting up sleeping bags, posting signs and flags in the planters, aggressively approaching people with business in the courthouse, and attaching signs to flagpoles. . . . .
>
> . . . [P]rotestors have yelled and taunted court personnel and others in the [Restricted Area]. They have stepped in front of and surrounded court personnel in the [Restricted Area]. They have used the planters for sitting, eating pizza, leaving trash, and even defecating. As a result, the landscaping at the courthouse has been damaged. Graffiti has been left on the barriers in front of the courthouse.

(ECF No. 40 ¶¶ 23–24.) In short, the Second Judicial District says that this Court's Injunction "emboldened" protesters "to violate even those portions of the [Plaza Order] not enjoined by this Court." (*Id.* ¶ 23.)

"Not enjoined by this Court" is very important observation. The Second Judicial District remains free to enforce Paragraphs 2–4 of the Plaza Order. (*See* ECF No. 28 at 26.) Paragraph 2 prohibits obstructing individuals, including courthouse personnel, from "clear passage, entry, or exit." (ECF No. 25-1 at 2.) Paragraph 3 prohibits "structures," tents, chairs, tables, "or similar items." (*Id.*) Paragraph 4 prohibits sound amplification equipment "in a manner that harasses or interferes with persons entering or leaving Courthouse grounds." (*Id.*) Moreover, the Injunction specifically permits the Second Judicial District to enforce the *entire* Plaza Order as to individuals physically

---

[3] Although these are separate factors in the Rule 62(c) analysis, the Second Judicial District is itself an entity that serves the public and so its argument is the same for both.

located within the Landscaping or Gravel Area.  (ECF No. 28 at 24–25.)

The Court agrees with Denver that at least most of the conduct described in the Stay Motion "is not only unlawful, but largely non-speech related and completely divorced from any jury-nullification message."  (ECF No. 51 at 3.)  And even as to expressive activity—*e.g.*, "march[ing] and display[ing] the[] message of 'FTP (Fuck the Police'" (ECF No. 40 ¶ 25)—this Court only enjoined enforcement of Paragraph 1 of the Plaza Order against "any Plaintiff (including any FIJA member) physically located in the Restricted Area to the extent he or she is otherwise lawfully seeking to distribute and/or orally advocate the message contained in the pamphlets titled 'Fresh Air for Justice' and/or 'Your Jury Rights: True or False?'"  (ECF No. 28 at 25.)  This language was intentionally narrow, responding precisely to Plaintiffs' concerns and preserving the Second Judicial District's discretion as much as possible.  The Court does not prejudge whether the reasoning of its Injunction could apply equally well to messages other than jury nullification advocacy, but as the Injunction currently stands, that message is the only message protected from Paragraph 1 of the Plaza Order.

The Court also emphasizes the phrase "otherwise lawfully."  Plaintiffs themselves admit that harassment and intimidation are unlawful.  (ECF No. 50 at 3.)  Moreover, this Court would be hard-pressed to find Defendants in violation of the Injunction for preventing even a jury nullification advocate from, *e.g.*, screaming and taunting while invading a court employee's personal space.  (*See* ECF No. 40-3 ¶ 6.)  This would hardly be the archetypal "lonely pamphleteer," as Plaintiffs cast themselves at the Preliminary Injunction Hearing.

9

The larger problem appears to be, once again, Denver's and the Second Judicial District's strained relationship. The Second Judicial District states that "Denver . . . has enforced its city ordinances only in fits and starts." (ECF No. 40 ¶ 3.) If anything, it is Denver's unwillingness to enforce the law, not this Court's Injunction, that is causing allegedly irreparable harm. Thus, the irreparable harm factor does not weigh in the Second Judicial District's favor.

## C.   Injury to the Other Parties Interested in the Proceeding

The Second Judicial District argues that full enforcement of the Plaza Order would leave Plaintiffs ample room just outside the Restricted Area to convey their message, and so Plaintiffs will suffer no true injury. (ECF No. 40 ¶ 26.) This is a closer call. On the one hand, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (internal quotation marks omitted). On the other hand, the Court sees potential merit in the Second Judicial District's argument that Plaintiffs may not be losing any substantial First Amendment freedom because they will still be easily seen and heard from many locations outside the Restricted Area. Plaintiffs believe they need the opportunity to approach individuals personally (*e.g.*, to offer a pamphlet) because their message is supposedly not well-suited to slogans that could be chanted or painted on signs and therefore understood from afar. But as the Court noted previously, the First Amendment might provide *less* protection in person-to-person situations because of the potential for harassment. (ECF No. 28 at 21 n.7.)

Ultimately, the Court need not decide whether this Rule 62(c) factor weighs in

favor of Plaintiffs or the Second Judicial District.  The other factors plainly do not favor the Second Judicial District, and the Court cannot see how this one factor could outweigh the others under the circumstances.  Thus, a stay pending appeal is unwarranted.

### III.  CONCLUSION

For the reasons set forth above, the Second Judicial District's Motion to Suspend Preliminary Injunction Pending Appeal (ECF No. 40) is DENIED.

Dated this 3rd day of September, 2015.

BY THE COURT:

William J. Martinez
United States District Judge