IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-1775-WJM-MJW

ERIC VERLO,
JANET MATZEN, and
FULLY INFORMED JURY ASSOCIATION,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, COLORADO, a municipality,
ROBERT C. WHITE, in his official capacity as chief of police for Denver, and
CHIEF JUDGE MICHAEL MARTINEZ, in his official capacity as chief judge of the Second Judicial District,

    Defendants.

## ORDER GRANTING DENVER DEFENDANTS' MOTION TO DISMISS

Plaintiffs Eric Verlo, Janet Matzen, and the Fully Informed Jury Association ("FIJA") (collectively, "Plaintiffs") bring this lawsuit to establish that they have a First Amendment right to distribute and discuss literature regarding jury nullification in the plaza outside of Denver's Lindsey-Flanigan Courthouse ("Courthouse Plaza" or "Plaza"). (ECF Nos. 1, 13-1.) Plaintiffs have sued the City and County of Denver and its police chief, Robert White, in his official capacity (collectively, "Denver"), as well as Second Judicial District Chief Judge Michael Martinez.

Currently before the Court is Denver's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (ECF No. 64.) For the reasons explained below, the Court grants Denver's Motion under Rule 12(b)(1), and therefore does not reach Denver's arguments under Rule 12(b)(6).

## I. LEGAL STANDARD

A motion under Rule 12(b)(1) is a request upon the court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Dismissal of a complaint under Rule 12(b)(1) is proper when the Court lacks subject matter jurisdiction over a claim for relief. *See SBM Site Servs., LLC v. Garrett*, 2012 WL 628619, at *1 (D. Colo. Feb. 27, 2012).

When a court's subject matter jurisdiction is challenged, the court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. United States*, 342 F.3d 1282, 1296 (10th Cir. 2003) (stating that "when a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts'" (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)); *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); *see also Holt*, 46 F.3d at 1003.

Only where the jurisdictional question is intertwined with the merits (not present here) is conversion of a Rule 12(b)(1) motion into a motion for summary judgment under Rule 56 appropriate. *Id.*; WJM Revised Practice Standards III.D.3.

## II. FACTS & PROCEDURAL HISTORY

The Court has already recounted in detail the events leading up to this case in its previous order granting Plaintiffs' request for a preliminary injunction. (*See* ECF No. 28.) The following summary is adequate for present purposes.

On July 27, 2015, two non-parties, Mark Iannicelli and Eric Brandt, were peacefully distributing literature regarding jury nullification to passersby on the Courthouse Plaza. (*Id.* ¶¶ 15–17.) Iannicelli was arrested that day, and Brandt was arrested a week later, for alleged violation of Colorado's jury-tampering statute, Colo. Rev. Stat. § 18-8-609. (*Id.* ¶ 19.)

Plaintiffs wish to distribute jury nullification literature, and discuss the subject of jury nullification, on the Courthouse Plaza. (*Id.* ¶¶ 21–22.) Fearing that they would likewise be prosecuted, Plaintiffs filed this lawsuit on Monday, August 17, 2015, naming Denver and Chief White as defendants ("Original Complaint"). (ECF No. 1.) Plaintiffs requested, among other things, "a[] [permanent] injunction against Defendants barring them from in any way applying the jury tampering statute in an unconstitutional attempt to silence free speech." (*Id.* at 8.)

Simultaneous with their Original Complaint, Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 2.) This Court promptly set a hearing on that motion for Friday, August 21, 2015. (ECF No. 8.)

On Wednesday, August 19, 2015, Plaintiffs filed their Amended Complaint.[1] The Amended Complaint states that on August 14, 2015 (the Friday before Plaintiffs filed their Original Complaint), Chief Judge Michael Martinez of Colorado's Second Judicial District (which is coterminous with the City and County of Denver) had issued an order

---

[1] Plaintiffs originally filed the Amended Complaint as an attachment (ECF No. 13-1) to a "Notice of Filing of First Amended Complaint" (ECF No. 13). Several weeks later, Plaintiffs filed the attachment under its own docket entry (ECF No. 57). In other words, ECF No. 13-1 and ECF No. 57 are identical. Because ECF No. 57 is actually described on the docket as an "Amended Complaint," the Court elects to cite ECF No. 57.

("Plaza Order") essentially prohibiting all expressive activities on the Courthouse Plaza. (ECF No. 57 ¶ 2.) Plaintiffs accordingly added Chief Judge Martinez as a defendant in his official capacity, and attacked the Plaza Order as unconstitutional. (*Id.* ¶¶ 14, 24–25.) Plaintiffs also supplemented their Motion for Preliminary Injunction to encompass the Plaza Order. (ECF No. 14.)

On Thursday, August 20, 2015, Denver filed, on behalf of itself and Plaintiffs, a stipulation ("Stipulation") that Denver would not interfere with Plaintiffs' intention to peacefully pass out jury nullification literature on the Courthouse Plaza, regardless of the Plaza Order. (ECF No. 23.) In full, the Stipulation reads as follows:

> Plaintiffs, Eric Verlo, Janet Matzen and the Fully Informed Jury Association and Defendants, the City and County of Denver and Robert C. White, in his official capacity as chief of police for Denver, hereby stipulate to the following:
>
> 1. The Lindsey-Flanigan plaza ("Plaza"), which is located between the Van Cise-Simonet Detention Center and the Lindsey-Flanigan courthouse is a public forum and any content-based regulations must be narrowly drawn to effectuate a compelling state interest and reasonable time, place and manner regulations.
>
> 2. Plaintiffs who wish to engage in peacefully passing out jury nullification literature to passersby on the Plaza are entitled to do so and that Denver, through its police or sheriff department, will not arrest or otherwise charge Plaintiffs for handing out literature regarding jury nullification so long as Plaintiffs do not violate Colorado law or Denver's Revised Municipal Code when they are handing out their literature. The parties stipulate that Plaintiffs' proposed intent of peacefully handing out jury nullification literature to or discussing jury nullification with passersby at the Plaza, without more, does not violate Colorado law. Plaintiffs acknowledge that their right to hand out literature regarding jury nullification is also subject to

      compliance with any other applicable law.

3. Through this Stipulation, Denver is not waiving its right to impose content and viewpoint neutral reasonable time, place and manner restrictions on the use of the Plaza or to charge or arrest one or more of the Plaintiffs if probable cause exists to believe that their conduct violates the law.

4. On August 14, 2014 [*sic*: 2015], Denver District Court Chief Judge Michael Martinez entered an Order banning all speech activities from the courthouse plaza and the areas surrounding the courthouse. Denver stipulates that it does not intend to enforce the August 14, 2015 Order as written and will only impose content and viewpoint neutral reasonable time, place and manner restrictions on the use of the Plaza, and/or other exterior areas surrounding the Plaza if Denver determines that a compelling need exists to do so.

5. The parties agree to this Stipulation being entered as an order of the Court.

(*Id.* at 1–2.)

On Friday, August 21, 2015, the Court held its hearing on Plaintiff's Motion for Preliminary Injunction. (ECF No. 27.) There, the rift between Denver and the Second Judicial District became more obvious, as both entities claimed control over the Courthouse Plaza. This Court ruled that Plaintiffs were likely to succeed in proving that Denver controls the Courthouse Plaza. (ECF No. 28 at 15–19.)

Denver filed its present Motion to Dismiss on September 30, 2015. (ECF No. 64.) While the Motion has been pending, the Denver District Court dismissed the pending charges against Brandt and Iannicelli.[2] The Denver District Attorney's Office

---

[2] *See* Noelle Phillips, "Denver judge dismisses charges against jury nullification activists," *Denver Post* (Dec. 16, 2015), at http://www.denverpost.com/news/ci_29262852/

5

stated in January that an appeal was under consideration (*see* ECF No. 89 at 6 n.2), but no party has informed the Court whether any such appeal was ever taken.

### III.  ANALYSIS

Denver points out that the only substantive relief Plaintiffs seek is an injunction "in the form of a permanent injunction consistent with the preliminary injunction that this Court previously entered." (ECF No. 64 at 5.)  Denver has refused to stipulate to a permanent injunction (*see id.* at 2; ECF No. 68 at 2), but argues that the Stipulation nonetheless moots Plaintiffs' claim for injunctive relief because it is "the precise remedy Plaintiffs seek in the permanent injunction" (ECF No. 64 at 6).  Accordingly, says Denver, this Court lacks Article III jurisdiction over Plaintiffs' claim against Denver.  (*Id.* at 7.)

Denver draws heavily on *Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007). Thomas Mink was a University of Northern Colorado student who published an online journal regarding university events, and which included a column written by "Junius Puke," an admitted spoof of a university professor named Junius Peak.  *Id.* at 1249. Peak reported the column to the local police and swore out a complaint for criminal libel under Colorado law.  *Id.*  The police department began an investigation, obtained a warrant, searched Mink's home, and seized his computer.  *Id.*  When the local district attorney would not respond to Mink's attorney's inquiries regarding whether Mink would be charged, Mink filed suit in this Court to challenge the constitutionality of Colorado's criminal libel statute.  *Id.* at 1249–50.  Soon after, the district attorney announced that

---

denver-judge-dismisses-charges-against-jury-nullification-activists (last accessed Apr. 4, 2016); *also available at* 2015 WLNR 37745997.

he would not bring charges and issued "a written 'No File' decision, concluding that the statements contained in [the Junius Puke column] could not be prosecuted under the statute."  Id. at 1250.  This Court then dismissed Mink's constitutional challenge for lack of standing.  Id. at 1250–51.

The Tenth Circuit affirmed Mink's lack of standing.  The Tenth Circuit stated that, considering the First Amendment context, it was Mink's duty to allege: "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and (2) a credible threat of future prosecution."  Id. at 1253 (internal quotation marks omitted).  Moreover, "the mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue."  Id. (internal quotation marks omitted).  Given the district attorney's formal disavowal of intent to prosecute, the Tenth Circuit found no credible threat of prosecution.  Id. at 1255.

Denver analogizes the Plaza Order to an unconstitutional statute that is on the books but unlikely to be enforced by Denver in light of the Stipulation.  (ECF No. 64 at 5.)  In response, Plaintiffs do not contest the analogy to an unconstitutional statute, nor do they argue that *Mink* provides the wrong framework for analyzing this issue.  Plaintiffs also do not contest Denver's assertion that the Stipulation amounts to "the precise remedy Plaintiffs seek in the permanent injunction" (ECF No. 64 at 6), and Plaintiffs do not otherwise suggest that the terms of the Stipulation are more limited than the terms they would seek in a permanent injunction.  Rather, Plaintiffs claim that the Stipulation does not insulate them from future arrest:

> . . . Denver's stipulation has no impact upon the district attorney's office and it was the D.A. who obtained a warrant from a county court judge resulting in Brandt's arrest. The Denver stipulation not only has absolutely no impact whatsoever on any Denver D.A., but no county court judge is bound by Denver's stipulation. If any judge, by merely signing a warrant as in Eric Brandt's case, orders the Defendants to make an arrest, they are obligated to make an arrest. As such, Denver's stipulation is meaningless if a D.A. obtains an arrest warrant from a judge. If a warrant issues, as it did for Brandt, Colorado law mandates Colorado Rule of Criminal Procedure 4(b)(1)(II) be invoked, which states in relevant part that any warrant "[s]hall [c]ommand that the defendant be arrested and brought without unnecessary delay before the nearest available judge of a county or district court…" (emphasis added). C.R.Crim.P. 4(c)(1)(III) states in relevant part "The warrant *shall* be executed by *arresting* the defendant." (emphasis added). Denver's stipulation offers no protection whatsoever to the Plaintiffs any[ ]more than the same stipulation would have prevented Eric Brandt from being arrested upon the issuance of a warrant obtained by the district attorney.

(ECF No. 68 at 5–6.)

There are at least two implied premises in this argument: (1) Denver police officers have no discretion on whether or when to execute an arrest warrant, and (2) a permanent injunction would overcome the potential problem of placing Denver police officers between the choice of abiding by the Stipulation or executing an arrest warrant. Although Plaintiffs have offered no authority for the first premise, the Court will assume for argument's sake that it is true.[3] Even under that assumption, the second premise does not necessarily follow. Although this Court never formally declared that the Stipulation should be treated as an order of the Court, the Court relied on it as a settled matter when resolving the Motion for Preliminary Injunction. (ECF No. 28 at 15–18.)

---

[3] Is there such a thing as "warrant nullification"?

To eliminate all doubt, the Court now adopts the Stipulation and has contemporaneously entered it as an Order of this Court, just as Plaintiffs and Denver agreed. (*See* ECF No. 23 ¶ 5.) The Stipulation is now, therefore, effectively a permanent injunction.

In that light, Denver police officers in the hypothetical situation proposed by Plaintiffs face a contempt proceeding regardless of what they choose to do: a contempt proceeding in this Court for violating the Stipulation which has been adopted as an Order of this Court, or a contempt proceeding in the warrant-issuing court for failing to execute the warrant. To be sure, the Supremacy Clause would be a potent defense to any contempt proceeding brought by the warrant-issuing court, but the Anti-Injunction Act (28 U.S.C. § 2283) and doctrines such as *Younger* abstention (*see Younger v. Harris,* 401 U.S. 37 (1971)) eliminate any notion that the police officers in such a proceeding could receive automatic relief from this Court.

At this phase, the Court need not drain this hypothetical swamp. The entire discussion is enough to show that Plaintiffs' theory of potential continuing harm from Denver is too speculative to sustain standing. "The possibility of future enforcement need not be reduced to zero to defeat standing. It is not necessary for defendants to refute and eliminate all possible risk that the statute might be enforced to demonstrate a lack of a case or controversy." *Mink*, 482 F.3d at 1255 (internal quotation marks and citation omitted; alterations incorporated). Here, given the Stipulation to which Denver freely agreed, there is no credible threat that Denver will enforce the Plaza Order or Colorado's jury-tampering statute against individuals distributing jury nullification literature on the Courthouse Plaza—or at least no threat that is different in kind than, or

in degree from, the threat that would continue to exist in the presence of a permanent injunction, given that the Denver District Attorney's Office is not a party here and therefore could not be restrained by the Stipulation or an eventual permanent injunction. Accordingly, Plaintiffs lack standing to continue to pursue this lawsuit against Denver.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Denver's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) (ECF No. 64) is GRANTED;

2. Plaintiffs' claims against the City and County of Denver and Robert C. White are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction; and

3. The Clerk shall terminate the City and County of Denver and Robert C. White as parties.

Dated this 6th day of April, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge